UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICHARD D. BLAIR,

    Plaintiff,

Case No. 04-70411

Honorable Nancy G. Edmunds

v.

HENRY FILTERS, INC.,

    Defendant.

_____/

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [48]**

This case arises out of Plaintiff Richard Blair's employment with Defendant Henry Filters, Inc. ("Henry Filters") and his termination on August 31, 2003. Plaintiff's Amended Complaint alleges: (1) age discrimination under the federal Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621, *et seq.*, and Michigan's Elliott-Larsen Civil Rights Act, Mich. Comp. Laws Ann. § 37.2202(1)(a)(Counts I and II); (2) defamation (Count III); (3) invasion of privacy (Count IV); and (4) entitlement to a declaratory judgment that the covenant not to compete in his employment contract is unreasonable (Count V).

This matter is presently before the Court on Defendant's motion for summary judgment. Defendant's motion is GRANTED because (1) Plaintiff has not presented direct evidence that he was terminated because of his age and has not presented circumstantial evidence showing that Defendant's legitimate, nondiscriminatory business reason for his termination was a pretext for age discrimination; (2) Plaintiff has not and cannot establish his defamation claim; and (3) Plaintiff, in his response, voluntarily dismissed his claims for

invasion of privacy and declaratory relief.

**I.	Facts**

Plaintiff Richard Blair was employed by Henry Filters from December 1, 1986 to August 31, 2003 as a sales engineer. (Martinez Aff. ¶ 4.)

Henry Filters is and has been in the business of custom engineering, manufacturing, and marketing of industrial liquid filtration systems primarily for the machine cutting industry. (Martinez Aff. ¶ 5.) In 1998, all of Henry Filters' stock was sold to Durr Ecoclean, Inc. (Martinez Aff. ¶ 8.) At that time, Plaintiff entered into an employment agreement with Durr Ecoclean. (Martinez Aff. ¶ 9.)

There are three United States companies within Durr Ecoclean: (1) Henry Filters, Inc.; (2) Durr Automation, Inc. is headquartered in Warren, Michigan, and primarily manufactures and sells industrial washers and automation; and (3) H.R. Black Co., Inc. is headquartered in Wixom, Michigan, and manufactures and sells filtration systems primarily for the industrial washer industry. (Martinez Aff. ¶ 10.)

Daniel Zinger was named President/CEO of Durr Ecoclean, and maintains offices in Wixom, Michigan and Bowling Green, Ohio. (Martinez Aff. ¶ 11.) Raul Martinez was formerly Vice President of Operations for Henry Filters, and his office was in Bowling Green, Ohio. (Martinez Dep. at 6.) Martinez is currently employed by Henry Filters as its Vice President and General Manager. (Martinez Aff. ¶ 3; Martinez Dep. at 6.)

John Tsolis joined Henry Filters in January, 2001, as Vice President of Sales at Henry Filters, and became Plaintiff's immediate supervisor. (Tsolis Dep. at 10-11.) His office was and remains located at Henry Filters in Bowling Green, Ohio. (Jackson Dep. at 54.)

In late October, 2001, Daniel Zinger announced that the sales activities of Henry

Filters, H.R. Black, and Durr Automotive would be consolidated into Durr Ecoclean Group, North American Sales/Proposals to eliminate duplicate efforts. (Def.'s Ex. C, 10/26/01 memo from Zinger.)

Preliminary discussions about how to structure of the new Durr Ecoclean sales team were held in mid-2001 among Zinger, Tsolis, and Jackson. (Jackson Dep. at 43.) As part of these preliminary discussions, Mr. Jackson decided to take Plaintiff off the Ford Motor account and to place him on the General Motors account because he wanted a filtration expert within the General Motors structure and Plaintiff was such an expert. (Jackson Dep. at 43-44; Tsolis Dep. at 10-13.) Plaintiff was informed by John Tsolis, on April 4, 2001, that he was being taken off the Ford Motor account and was being assigned to the General Motors account. (Blair Aff. ¶ 11.)

Another younger employee, Brian Mahas, was assigned to the Ford Motor account. (Blair Aff. ¶ 11.) Mr. Jackson decided to put Brian Mahas on the Ford Motor account because the company had decided to "attack the automation and washing machine business at Ford and filtration was secondary. . . . [the company] had no success [at] Ford Motor Company for three years, . . . we continued to be very difficult to secure filtration business." (Jackson Dep. at 45.) Mr. Jackson advised John Tsolis of his thought process behind this move. (*Id.*) After Plaintiff's move to the General Motors account, the account in total remained strong, but from the filtration perspective, it continued to be very difficult. (Jackson Dep. at 46-47.)

Effective November 1, 2001, Mark Jackson was promoted to Vice President of this consolidated sales group, with responsibility for the all sales and proposal efforts for Durr Automation, Henry Filters, and H.R. Black, and the whole North American sales force

reported to Mr. Jackson. (Def.'s Ex. C, 10/26/01 memo from Zinger; Martinez Aff. ¶ 12; Jackson Aff. ¶ 3; Duncum Dep. at 80-81.) In that capacity, Mr. Jackson reported directly to Zinger. (Duncum Dep. at 81.)

Mark Jackson is currently employed by Durr Automation as its Vice President, Sales, Durr Ecoclean and North America, and is responsible for the sales and applications for all Ecoclean groups which include Durr Automation, Henry Filters, and H.R. Black. (Jackson Aff. ¶ 3.) His permanent office is in Wixom, Michigan. (Jackson Dep. at 54.)

After this consolidation of sales in November, 2001, John Tsolis was no longer Vice President of Sales of Henry Filters. He now reported to Mark Jackson. (Tsolis Dep. at 10-11.) Tsolis is currently employed by Henry Filters as its Vice President. (Tsolis Aff. ¶ 3.)

In 2003, Durr Ecoclean was experiencing financial difficulties. It was decided that the sales department, which was Mr. Jackson's responsibility, needed to reduce cost. Its budget was comprised almost entirely of people and people-related costs. As a result, the only viable way to reduce costs in the sales department was through a reduction in force. (Jackson Aff. ¶¶ 4-6; Duncum Dep. at 82.)

Effective February 18, 2003, Mr. Jackson selected Charles Johnson, age 35, for a reduction in force as a result of the company's financial difficulties. (Jackson Aff. ¶ 6; Martinez Aff. ¶ 17.)

Mr. Jackson kept watching the financial picture, hoping that it would improve and that additional reductions in force would not be necessary. Unfortunately, the financial picture did not eliminate the need for continued reductions in force. As a result, effective April 8, 2003, Mr. Jackson selected Bill Cruey, age 38. Effective August 1, 2003, Jill Ciszewski, secretary to Mr. Jackson, age 39, was terminated. (Jackson Aff. ¶¶ 7-9; Martinez Aff. ¶¶

18-19.)

Effective August 29 and 31, 2003, respectively, Roger Brodeur, age 37, and Plaintiff Richard Blair, age 57, were selected for termination. (Jackson Aff. ¶¶ 10-11; Martinez Aff. ¶ 20.) Plaintiff and Roger Brodeur were primarily assigned to the General Motors accounts. At that time, General Motors was emphasizing purchasing decisions through auctions and target pricing. Consequently, direct sales activities were relatively less important. (Jackson Aff. ¶ 13.)

Mr. Jackson made the decision to terminate Mr. Brodeur, Plaintiff, and Jill Ciszewski about two months prior to their August terminations. (Jackson Dep. at 55.)

Mr. Tsolis called Plaintiff, who was on vacation, to advise him that Henry Filters was terminating his employment effective August 31, 2003. When asked why, Mr. Tsolis did not provide a reason. (Blair Aff. ¶ 13.) Linda Kuhn, the person responsible for human resources at Henry Filters in Bowling Green, prepared and sent letters to Plaintiff regarding his termination. (Kuhn Aff. ¶ 11.) After Plaintiff failed to respond, Ms. Kuhn contacted Henry Filters' attorneys who prepared a letter that was subsequently sent to Plaintiff, explaining his options. The letter, dated "As of August 1, 2003," was signed by John Tsolis on behalf of Henry Filters, Inc., and confirmed that Plaintiff's employment was to be terminated effective August 31, 2003, and reviewed the terms of his employment agreement. (Blair Aff., Ex. B.)

When making reduction-in-force selection decisions, Mr. Jackson considered the job functions performed by the individual as well as their overall contribution to the company's sales department. The need was to make the sales organization as effective as possible at a lower cost. (Jackson Aff. ¶ 12.) He personally analyzed the company's financial

projections, future sales, and sales strategies. He also personally observed the sales activities of all of the sales department employees. Only business-related reasons were considered; not the age of individuals selected for termination as part of the reduction in force. (Jackson Aff. ¶¶ 12-15.)

Each of these reduction-in-force termination decisions was made by Jackson, who did not rely upon any recommendations from any other person. (Jackson Aff. ¶ 15.) Each of Mr. Jackson's termination decisions within the Ecoclean group had to be approved by Mr. Zinger, as President/CEO. (Zinger Dep. at 11-13, 15.)

From 2001 through 2003, Henry Filters terminated the employment of 67 of its employees, including Plaintiff. It did not replace 24 other employees who chose to leave on their own during this period. This reduced the employment level from 143 to 52 full-time employees. (Martinez Aff. ¶ 14.)

As of January 1, 2001, the average age of Henry Filters' employees was age 40. On January 1, 2002, the average age was 41. On January 1, 2003, the average age was 43. At the time of Plaintiff's termination, August 31, 2003, the average age was 44. (Kuhn Aff. ¶¶ 4-7; Martinez Aff. ¶¶ 4-7.) Plaintiff was in the last group of employees terminated in Henry Filters' downsizing efforts. (*Id.*)

**II.   Summary Judgment Standard**

Summary judgment is appropriate only when there is "no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56©. The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Rule 56©

mandates summary judgment against a party who fails to establish the existence of an element essential to the party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The non-moving party may not rest upon its mere allegations, however, but rather "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The mere existence of a scintilla of evidence in support of the non-moving party's position will not suffice. Rather, there must be evidence on which the jury could reasonably find for the non-moving party. *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 432 (6th Cir. 2002).

### III.  Analysis

#### A.  Age Discrimination Claims

Plaintiff brings his age discrimination claims under both the federal ADEA and Michigan's Elliott-Larsen Civil Rights Act, arguing that he was selected for termination because of his age. Michigan courts look to federal law for guidance when reviewing claims of age discrimination based on state law. *Featherly v. Teledyne Industries, Inc.*, 486 N.W.2d 361, 364 (Mich. Ct. App. 1992). "A plaintiff seeking recovery under both acts must bear the burden of proving a prima facie case of discrimination." *Hein v. All Am. Plywood Co.*, 232 F.3d 482, 488 (6th Cir. 2000).

Plaintiff can meet this burden either by presenting direct evidence that Henry Filters intentionally discriminated against him because of his age or by presenting circumstantial evidence, following the *McDonnell Douglas* burden-shifting analysis. *Rowan v. Lockheed Martin Energy Systems, Inc.*, 360 F.3d 544, 547 (6th Cir. 2004). Plaintiff argues that he has both direct and circumstantial evidence of age discrimination. The Court first examines his proffered "direct evidence."

**1. Direct Evidence**

As the Sixth Circuit recently observed, "[i]f the plaintiff[] can establish direct evidence of discrimination, then [he] need not go through the *McDonnell Douglas* burden-shifting analysis." *Rowan*, 360 F.3d at 548. "Direct evidence is evidence that proves the existence of a fact without requiring any inferences." *Id.* Contrary to Plaintiff's arguments here, this Court concludes that he has not come forward with any "direct evidence" that he was terminated because of his age.

The Court first addresses comments allegedly made by Plaintiff's immediate supervisor, John Tsolis.

Plaintiff avers in his affidavit that he overheard John Tsolis telling someone in his office that Al Culler, a salesman who was age 60 at the time, was up in age and that one way to get rid of him would be to force him into retirement by extending his territory, thus requiring him to spend more time on the road. (Blair Aff. ¶ 8.) This proffered evidence fails for several reasons. First, because Plaintiff does not allege "that the statement was made in relation to the decision to discharge the plaintiff as part of the reduction in force, an inference is required that such a bias may have played a role in the decision" to terminate Plaintiff. *Rowan*, 360 F.3d at 550. Accordingly, this statement is not, by definition, direct

evidence. Moreover, "statements by non-decision makers, or statements by decision makers unrelated to the decisional process itself [can not] suffice to satisfy the plaintiff's burden of demonstrating animus." *Id.* (internal quote marks and citation omitted).

Plaintiff next avers that, on numerous occasions between 2001 and 2003, Tsolis frequently referred to him as "the old man" in sales meetings with other sales people present. (Blair Aff. ¶ 9.) These comments likewise require an inference to conclude that Plaintiff was terminated because of his age and thus are not "direct evidence" of that fact. There is no allegation that the comments were made by a decision-maker during the decisional process, and thus Plaintiff has failed to present evidence connecting Tsolis' alleged age-bias to Jackson's decision to select him for termination. *Rowan*, 360 F.3d at 550.

The same is true for Tsolis' alleged comment at a Spring 2001 sales dinner that Plaintiff is "the old guy on the sales force" and his comment to others in the GM Purchasing Department parking lot inquiring whether they thought "the old guy can make it up the stairs?" (Blair Aff. ¶¶ 10, 12.)

Likewise, Tsolis' alleged comment to Plaintiff on April 4, 2001, that he was "too old to be calling on Ford staff people" at the time when Plaintiff was told that he would now be handling the General Motors rather than the Ford Motor account is not direct evidence that Plaintiff was terminated in August 2003 because of his age. (Blair Aff. ¶ 11.) The undisputed testimony is that Mr. Jackson made the decision to change Plaintiff's responsibility from the Ford to the General Motors accounts as a preliminary step in combining the sales forces of Henry Filters, Durr Automotive and H.R. Black into one group that would work under his direction. Mr. Jackson testified that he made the decision and

9

then advised Tsolis of his thought process behind this move. (Jackson Dep. at 45.) Mr. Tsolis then advised Plaintiff of Mr. Jackson's decision. This is not a statement made by a decision-maker at the time of Plaintiff's termination and thus does not constitute direct evidence that Plaintiff was terminated because of his age. *Rowan*, 360 F.3d at 550.

Plaintiff's reliance on a statement another salesman, Richard Duncum, overheard about two months before Plaintiff was terminated is similarly misplaced. Mr. Duncum testified that, as Mr. Tsolis was coming out of a closed-door meeting at Durr Automation in Wixom with Mark Jackson, he overheard John Tsolis say that "he needed to set up a younger sales force" and that "the sales people calling on individual accounts are too old and he wanted a younger sales force." (Duncum Dep. at 28, 36.) Mr. Duncum, age 58, asked Tsolis what he meant, and Tsolis told Duncum not to worry about it, that he was hired for a different reason. (Duncum Dep. at 25-34.) Mr. Duncum did not overhear Tsolis mention Plaintiff's name in this conversation but assumed that the comment pertained to Plaintiff because he "was the only one that had not been changed from the accounts that he had been calling on." (Duncum Dep. at 33.) Although the parties' dispute when this overheard statement was made, it is inadmissible hearsay and thus cannot be used to defeat Henry Filters' motion for summary judgment. *See North Am. Specialty Ins. Co. v. Myers*, 111 F.3d 1273, 1283 (6th Cir. 1997). Even if it were not, it would require an inference to conclude that Mr. Jackson decided to terminate Plaintiff because of Plaintiff's age. Accordingly, it is not, by definition, direct evidence of that fact.

Plaintiff also presents evidence attempting to show age-bias on the part of Daniel Zinger, President/CEO of Durr Ecoclean. A former Henry Filters employee, John L. Creps, avers that, on August 23, 2000, when he was 60 years old and responsible for overseeing

10

the research and development department of Henry Filters as well as the sales and service department, Daniel Zinger asked him "when do you expect to retire?" (Creps Aff. ¶¶ 6-7.) Zinger also stated at that same meeting that, "I want younger managers at Henry Filters and people that we can depend on in the future" and that Creps was "too old to be on my management team." (*Id.* at ¶ 7.) Mr. Creps subsequently sent an e-mail to Mr. Tsolis, his immediate supervisor, telling him about Zinger's comments and expressing a desire to work until age 65. (*Id.*, Ex. A, 9/26/00 e-mail.) Creps was terminated on November 21, 2002, when he was 62. (*Id.* at ¶ 10.) This too is inadmissible hearsay and thus cannot be used as evidence to defeat Defendant's motion for summary judgment. *See North Am. Specialty Ins. Co.*, 111 F.3d at 1280, 1283 (citing Fed. R. Civ. P. 56(e)). Even if it were not, it would require an inference to conclude that Mr. Zinger approved Mr. Jackson's decision to terminate Plaintiff because of Plaintiff's age. Accordingly, it is not, by definition, direct evidence of that fact.

Finally, despite testimony by Messrs. Jackson, Zinger, and Tsolis to the contrary, Plaintiff attempts to prove that Mr. Tsolis was involved in the decision to terminate him, thus rendering his age-related comments direct evidence that Plaintiff was terminated because of his age. Evidence that Tsolis was the one who informed Plaintiff that he was terminated, referred to himself as "The Terminator," that he told employees he had the authority to terminate people, and that he was perceived by Mr. Jackson's secretary, Jill Ciszewski, as having a "high degree of influence in hiring, promotion, and termination decisions," (Ciszewski Aff. at ¶¶ 5-6) is not, by definition, direct evidence that Tsolis was involved in the decision to terminate Plaintiff. To arrive at that conclusion, one must infer that, because Tsolis told others that he had authority to hire and fire some employees or gave the

11

perception that he had such authority or could influence such decisions, he did have such authority and/or influence and used it with regard to employees other than Plaintiff. One must further infer that, because Tsolis did have such authority or influence as to other employees, he was one of the decision-makers with regard to Plaintiff's termination or influenced that decision. More importantly, much of this evidence is inadmissible hearsay that cannot be used as either direct or circumstantial evidence to defeat Defendant's motion for summary judgment. *See North Am. Specialty Ins. Co.*, 111 F.3d at 1283. This includes Richard Duncum's deposition testimony that Tsolis told him that he made the decision to terminate Roger Brodeur and the two older guys at Henry Filters that were let go -- Mr. Gobal and Fred Pratuchy. (Duncum Dep. at 71-72.)

Additional evidence proffered by Plaintiff, attempting to show that Tsolis was instrumental in the decision to terminate him, is likewise inadmissible. Plaintiff proffers a form submitted to Michigan's Bureau of Workers' & Unemployment Compensation by Henry Filters in connection with Plaintiff's application for unemployment compensation. (Pl.'s Ex. G, 10/16/03 form.) On page two, in response to the question, "Who discharged the claimant?" it lists John Tsolis, Vice President of Sales.[1] (*Id.* at 2, ¶ 2.) Michigan law, however, precludes the admission of this form as either direct or circumstantial evidence in this matter. It prohibits the disclosure or use of information obtained from an employer in this context "in any action or proceeding before any court or administrative tribunal unless the commission is a party to or a complainant in the action or proceeding. . . ." *See*

---

[1] Linda Kuhn, Henry Filters' Human Resources Coordinator, avers that it was she that provided Tsolis's name in response to this question and she did so because he was the one who told Plaintiff that a decision had been made to terminate his employment as of August 31, 2003. (Kuhn Aff. ¶ 10.)

12

*Mich. Comp. Laws Ann.* § 421.11(b)(1)(iii).[2]

In light of the above, this Court concludes that Plaintiff has not presented any admissible, direct evidence that Plaintiff was terminated because of his age or that Tsolis authorized or influenced Jackson's decision to terminate Plaintiff.

### 2. Circumstantial Evidence

Plaintiff alternatively argues that he has circumstantial evidence that Henry Filters terminated him because of his age. "Circumstantial evidence . . . is proof that does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003). Because Plaintiff is attempting to establish his age discrimination claims with circumstantial evidence, the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), is applied. *Rowan*, 360 F.3d at 547.

The *McDonnell Douglas* burden-shifting framework consists of three stages. Plaintiff must "first establish a prima facie case of age discrimination." *Rowan*, 360 F.3d at 547. Once that is done, the burden shifts to Henry Filters, "who must give legitimate, non-discriminatory reasons for the adverse employment decision." *Id.* After Henry Filters satisfies this burden of production, Plaintiff must "establish that the legitimate reasons offered by [Henry Filters] were just a pretext for decisions actually motivated by an unlawful bias against age." *Id.*

When the employer eliminates a plaintiff's position pursuant to a reduction in force, the plaintiff establishes a prima facie case of age discrimination by showing that (1) he is

---

[2]There are exceptions to this prohibition but none apply here. *See Mich. Comp. Laws Ann.* §§ 421.11(b)(1)(iii) and (b)(2).

13

a member of a protected age class (i.e., older than 40); (2) that he was discharged; (3) that he was qualified for the position he held; and (4) "additional direct, circumstantial, or statistical evidence that the employer singled out the plaintiff for discharge for impermissible reasons." *Rowan*, 360 F.3d at 547 (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 350 (6th Cir. 1998)).[3]  "A plaintiff satisfies the fourth prong where he or she demonstrates that a comparable non-protected person was treated better." *Ercegovich*, 154 F.3d at 350 (internal quotes and citation omitted).

Plaintiff has not presented any evidence that a comparable, non-protected person was treated better. Rather, he presents circumstantial evidence of age bias on the part of Tsolis and Zinger that is unrelated to Jackson's decision to select Plaintiff for termination in the on-going reduction-in-force efforts. Likewise, the statistical evidence presented does not support an inference that Plaintiff was singled out for discharge for impermissible reasons.

---

[3] In age discrimination cases not involving a reduction in force, the fourth prong requires that the plaintiff show that he was replaced by a younger worker. *Rowan*, 360 F.3d at 547.

Plaintiff argues here that he was replaced by a younger worker, Buzz Benschoter, age 42, because Benschoter, an existing salesman at the company, took over Plaintiff's territory and customers after he was terminated. (Blair Aff. ¶ 15; Gregory Aff. ¶¶ 5-6.) As both the Sixth Circuit and the Michigan Supreme Court have observed, "a person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work. A person is replaced only when another employee is hired or reassigned to perform plaintiff's duties." *Lytle v. Malady*, 579 N.W.2d 906, 917 n. 27 (Mich. 1998) (citing *Barnes v. GenCorp, Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990)). Accordingly, even if this were not a reduction-in-force case, Plaintiff has failed to present evidence showing that he was "replaced" by a younger worker; i.e., that this existing salesman was "reassigned" to perform Plaintiff's duties rather than being assigned to perform Plaintiff's duties in addition to other duties or that Plaintiff's work was merely redistributed among existing employees already performing related work.

In fact, the evidence is to the contrary. At the same time that Jackson made the decision to terminate Plaintiff, he also decided to select two other members of the combined sales staff for termination: Roger Brodeur, age 37, and Jill Ciszewski, age 39. Other than baldly asserting that he was "replaced" by Buzz Benschoter, Plaintiff fails to show that this employee was similarly-situated or treated more favorably than him. *See Lytle*, 579 N.W.2d at 917 n.28 (observing that it is the plaintiff's burden to do so in an age discrimination case involving a reduction in force).

Even if Plaintiff were found to have satisfied the fourth prong of his *prima facie* case, he has not come forward with admissible evidence that would allow a reasonable jury to conclude that Henry Filters' legitimate business reasons for selecting Plaintiff for termination were merely a pretext for intentional age discrimination. Plaintiff's employer presents evidence that a reduction in force was required for financial reasons, that its combined sales department needed to reduce costs, and that its budget was comprised almost entirely of people and people-related costs. As a result, the only viable way to reduce costs was through a reduction in force in that department. Plaintiff, age 57, and Roger Brodeur, age 37, were selected for termination in August 2003. Both were primarily assigned to the General Motors accounts. At that time, General Motors was emphasizing purchasing decisions through auctions and target pricing, rendering direct sales activities relatively less important. Thus, Mr. Jackson, the individual with responsibility for all sales personnel, made the decision to select both Plaintiff and Mr. Brodeur for termination. Mr. Jackson has testified that age played no part in these determinations. (Jackson Aff. ¶¶ 4-6, 10-15; Jackson Dep. at 55.)

To prove pretext and intentional age discrimination, Plaintiff "must directly confront the

15

asserted justification for the discharge." *Rowan*, 360 F.3d at 550. Plaintiff "may not simply substitute [his] own business judgment for that of the defendant. Rather, to survive a summary judgment motion [he] must show that a reasonable jury could conclude that the actual reasons offered by the defendant were a mere pretext for unlawful age-discrimination, not that other reasonable decision-makers might have retained [Plaintiff]." *Id.*

"A plaintiff can refute the legitimate, nondiscriminatory reason that an employer offers to justify an adverse employment action by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Wexler*, 317 F.3d at 576 (internal quotes and citation omitted). Choosing the second option, Plaintiff attempts to show pretext with circumstantial evidence that (1) Tsolis, his immediate supervisor, influenced Jackson's decision to select Plaintiff for termination; and (2) that Tsolis did so because of Plaintiff's age.

Even if the Court assumes, as it does here for purposes of summary judgment, that Tsolis did influence Jackson's decision to select Plaintiff for termination in the on-going reduction in force of the sales department, this does not end the Court's inquiry. *Ercegovich*, 154 F.3d. at 355. It "must also examine the substance of the discriminatory remarks in determining their relevancy to a plaintiff's claim that an impermissible factor motivated the adverse employment decision taken against him . . . ." *Id.* "Isolated and ambiguous comments are too abstract, in addition to being irrelevant and prejudicial, to support a finding of age discrimination." *Id.* (internal quotes and citation omitted).

The admissible comments by Tsolis that Plaintiff argues show age-bias; i.e., calling

16

Plaintiff "the old man" or "the old guy in the sales force" or telling him that he was "too old to be calling on Ford staff people" "may well betray a bias that older workers are less valuable or competent." *Rowan*, 360 F.3d at 550. There is, however, no evidence that these comments were related to the decisional process. Accordingly, they are insufficient to allow a reasonable inference that Plaintiff was selected for termination because of his age. *Id.*

Moreover, unlike the plaintiff in *Wexler*, Plaintiff here has not presented evidence disputing the legitimacy of the business reason provided for his termination or put forth evidence that a much younger similarly-situated employee was treated more favorably. *Wexler*, 317 F.3d at 577. As discussed above, at the time Jackson decided to select Plaintiff for termination, he also chose Plaintiff's co-worker on the General Motors' accounts, Roger Brodeur, age 37, for termination. Mr. Jackson had also previously chosen three other younger employees for termination in the reduction in force efforts: Charles Johnson, age 35; Bill Cruey, age 38; and Jill Ciszewski, age 39. Plaintiff does not dispute these facts. Plaintiff has not met his burden on pretext. Accordingly, Defendant is entitled to summary judgment on his age discrimination claims.[4]

### B. Alleged Defamation

Count III of Plaintiff's Amended Complaint asserts a state-law claim of defamation.

---

[4] Plaintiff, in a single factually-unsupported paragraph, also argues that he can defeat summary judgment on his hostile work environment claim based on age discrimination under Michigan's Elliott-Larsen Civil Rights Act. Plaintiff is mistaken. He fails to present any evidence that improper age-bias communications were intended to or did substantially interfere with his employment or created an intimidating, hostile, or offensive work environment. Accordingly, Defendant is entitled to summary judgment on this claim as well.

It alleges that John Tsolis defamed Plaintiff by falsely stating or imputing that he committed a criminal offense – the theft and piracy of Defendant's confidential and trade secret information. (Am. Compl. ¶¶ 28-33.) Under Michigan law, the elements of a defamation claim are: "'(1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged publication to a third party, (3) fault amounting to at least negligence on the part of the publisher, and (4) either actionability of the statements irrespective of special harm, or the existence of special harm caused by the publication.'" *Stencel v. Augat Wiring Systems*, 173 F. Supp.2d 669, 680 (E.D. Mich. 2001) (quoting *Gonyea v. Motor Parts Fed. Credit Union*, 192 Mich. App. 74, 77, 480 N.W.2d 297 (1991)).

Contrary to Plaintiff's arguments here, there is no admissible evidence that anyone at Henry Filters accused him of committing a crime. Rather, Defendant presents evidence that beginning in March 2000, Henry Filters had been under-bid on a number of contracts under circumstances that caused it to believe that confidential information about pricing and bidding was being transmitted to a competitor. As a result, Henry Filters contacted the Bowling Green Police Department. The FBI was contacted, and Henry Filters cooperated and complied with the FBI's request for information during its investigation, including a list of names of individuals that may have had any communication with the competitor company, Advanced Filtration Company, and thus may have been involved in providing confidential information to that competitor company. (Martinez Aff. ¶ 13; Duncum Dep. at 55, 89-94.) Plaintiff's name was on that list, but he was not singled out. (Duncum Dep. at 94.) Mr. Brodeur's Affidavit likewise avers only that, in the fall of 2002, he was called into a meeting with Mr. Jackson and Mr. Tsolis and was informed that they believed that Plaintiff "may be" passing information to a competitor and was asked if he had heard any

18

conversations that would lead him to believe this to be true. (Brodeur Aff. ¶ 5.) This evidence shows that Plaintiff was under suspicion for passing confidential information and that Defendant was pursing information to either confirm or deny that suspicion. Mr. Brodeur does not aver that he was told that Plaintiff had, in fact, committed a crime. Ultimately, the FBI was unable to identify any person or persons who had transmitted any confidential information to a competitor. (Martinez Aff. ¶ 13.)

In light of the above, Plaintiff's defamation claim is also dismissed.

**IV. Conclusion**

For the above-stated reasons, Defendant's motion for summary judgment is GRANTED.


s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: September 26, 2005

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 26, 2005, by electronic and/or ordinary mail.

s/Carol A. Hemeyer
Case Manager